[No. 47445–1.  En Banc.  December 17, 1981.]

COWLES PUBLISHING COMPANY, *Respondent,* v.
JAMES MURPHY, *as Presiding Judge,*
ET AL, *Appellants.*

585

*Donald C. Brockett, Prosecuting Attorney,* for appellants.

*Witherspoon, Kelley, Davenport & Toole, P.S.,* by *Duane M. Swinton* and *E. Glenn Harmon,* for respondent.

BRACHTENBACH, C.J.—This case, one of first impression in Washington, concerns public access to affidavits of probable cause, search warrants issued thereon and returns and inventories resulting from execution of search warrants.

The publisher of the Spokane Daily Chronicle newspaper sought a writ of mandamus against Spokane District Court Judges. The writ of mandamus would require that the judges file, as a matter of public record for public inspection, all search warrants, affidavits of probable cause and inventory lists pertaining thereto. The trial court issued a writ of mandamus which will be described later. We affirm.

This matter arose when a reporter sought access to a specific affidavit of probable cause and the papers relating thereto. The executed search warrant did not result in the filing of a criminal action. The issuing judge denied the request.

The stipulated facts reveal that (1) the affidavits, search warrants and inventory lists (records) are maintained by the individual judges in their offices; (2) such records are not docketed or filed with the district court administrator; (3) no procedures have been established by the district court to review such records after the warrant is returned to ascertain whether confidentiality is required; and (4) all defendant judges, except one, would not review such records on an individual basis to determine if public access would be allowed.

The publisher does not claim that the press has any special right of access, but asserts its claim as "co–extensive with that of the public."

The writ issued by the trial court provided:

> The above–named defendant judges are hereby directed to file, as a matter of public record, for public inspection with the District Court Administrator all search warrants, affidavits of probable cause, and inventory lists that have been returned to them as required by Rule 2.10(d) of the Justice Court Criminal Rules and that are retained by them in their office files. . . . Said judges may hold public hearings, upon request of the Spokane County Prosecuting Attorney, for the purpose of determining, consistent with the Conclusions of Law entered in this action, whether certain portions of these records may not be disclosed to the public.

At the outset we emphasize that this case involves a fully executed and returned search warrant. Access to the records prior to the execution of the warrant is not before us.

I

Respondent publisher presents two rationales for public access to these records. First, because public officials (prosecutors, district court judges and county sheriffs) handle

these documents they are "public records". Second, the federal and state constitutions and the statutory and common law provide a right of access to these records. For the reasons discussed below we limit our holding to a finding that the common law allows public access to these records.

## A
## PUBLIC RECORDS

■ We find respondent's argument that these records are inherently within the public domain unpersuasive for several reasons. First, we reject the notion that documents are public or private simply because the person who handles them is or is not a public servant (or government employee). A judge's notes in conference are not public simply because the individual is an elected official. Nor are the entire records of a county sheriff or prosecutor subject to inspection if such inspection would jeopardize law enforcement. *See generally In re Braughton*, 520 F.2d 765, 766 (9th Cir. 1975); *In re McNerthney*, 95 Wn.2d 38, 621 P.2d 731 (1980) (deputy prosecutor reprimanded for revealing existence of warrant to subject of search prior to execution of warrant).

Similarly, we reject the idea that just because these officials collectively act upon a document it becomes public. A judge, sheriff and prosecutor might each handle a juvenile's record, but that record still does not become "public". *See In re Lewis*, 51 Wn.2d 193, 316 P.2d 907 (1957).

Moreover, we find the public/private distinction simply begs the question. In theory, every document either prepared or handled by someone in a governmental capacity is within the public domain. If the term public record is to mean anything it must be more than who handles it. Instead, the issue of access to records should be determined by the role the documents play in our system of government and the legal process. That approach raises several criteria for public access: (1) Does some substantive legal provision grant the right of access? (2) Will public access be beneficial to the legal system? (3) Would access jeopardize

any other interest?

A substantive right of access may be granted by (1) statute, (2) federal or state constitutions, or (3) the common law.

Respondent argues that the rationale behind this state's open records act, RCW 42.17.250 *et seq.*, supports a right of access to these records. The judges, however, urge us to interpret RCW 42.17.250 *et seq.*, and the exemptions therein. In *Cohen v. Everett City Council*, 85 Wn.2d 385, 390, 535 P.2d 801 (1975), we declined to determine whether the judicial branch was a "state agency" within the statute. We again reserve the question since it is not necessary under our rationale. Since we find that under the common law we have the inherent authority to control access to records such as these, we decline respondent's invitation to apply the rationale of RCW 42.17 or constitutional law in resolving this issue.

## B

### COMMON LAW

The common law right of access to judicial records is well recognized in this country. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 55 L. Ed. 2d 570, 98 S. Ct. 1306 (1978). Although few courts have discussed the boundaries of this right, those courts which have considered the problem recognize that the decision as to access is one best left to the discretion of the trial court. *Nixon*, at 599. That discretion should be exercised in light of the relevant facts and circumstances of each case. *Nixon v. Warner Communications, Inc., supra.*

The common law presumption of openness of judicial records is subject to certain limitations, however. Courts have the inherent authority to control their records and proceedings. *Nixon v. Warner Communications, Inc., supra; In re Sealed Affidavit(s) to Search Warrants*, 600 F.2d 1256 (9th Cir. 1979). We need not and do not attempt to determine the possible resolution of the extent of that inherent authority as to records not before us here.

Having recognized that the common law provides a general right of access to judicial records and that the right to access may be limited in the individualized discretion of the judge, we are left with the task of developing standards and procedures to guide trial judges in the exercise of that discretion.

Unfortunately, case law from other jurisdictions is of little assistance, *e.g., In re Sealed Affidavit(s) to Search Warrants, supra.* We look, therefore, to the nature of the public right of access. In this way, we can determine how to strike the balance between the right of the public and the need for effective law enforcement and individual privacy.

II

The common law presumption of open judicial records is grounded in the generalized belief that maximum public access to all governmental information provides the people, the governed, with the information to understand the functioning of their government and to evaluate the performance of public servants. Furthermore, an informed public is in a better position to exercise the freedom to choose intelligently those who will govern.

Although the informed public concept is generally associated with the legislative and executive branches, it is equally true of those involved in the judicial process. Access to search warrants and affidavits of probable cause can reveal how the judicial process is conducted. The procedures employed by the prosecutor and law enforcement can be evaluated. Access may also disclose whether the judge is acting as a neutral magistrate.

At the request of the court both parties conducted an informal survey in counties other than Spokane. A number of counties follow a practice the same as or similar to that involved here. Other counties allow free access unless sealed by court order. In a third category the problem had never arisen.

On the other hand, indiscriminate disclosure of these records may unnecessarily embarrass the subject of an unfruitful search, may allow a suspect to escape arrest or destroy evidence, and may discourage informants from providing information out of fear for their safety and well–being. These and other interests must be weighed carefully by judges in exercising their discretion.

The public's interest in an open legal process convinces us that our judicial process is best served by ordering that these records should be available to the public. At the same time we recognize that in some cases justice will not be served by public access. We therefore adopt the following procedures for the handling of search warrants:

1. Absent objection, an executed search warrant and the records pertaining thereto should be filed. *Cf.* Fed. R. Crim. P. 41(g).

2. Interested parties may request that a search warrant *not* be filed. Those entitled to so request include:

(a) the subject of the search

(b) law enforcement officials

(c) informants upon whose information the affidavit of probable cause was issued. These parties are the ones whose interests would be jeopardized by filing.

3. The objector to the filing must demonstrate that filing of the documents presents a substantial threat to one of the interests outlined above or another significant interest.

The person who objects to the filing of a search warrant must state specific reasons for the need for confidentiality. *In re Search Warrant for Second Floor Bedroom,* 489 F. Supp. 207, 210 (D.R.I. 1980).

4. The magistrate or judge must weigh the competing interests involved with making the documents a matter of public record, and determine whether a substantial threat exists to the interests of effective law enforcement, or individual privacy and safety. In addition, the judge must determine whether these interests might be served by deletion of the harmful material.

The trial court's order of mandamus is affirmed.

ROSELLINI, STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.