IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ARTHUR WEST, | ) | No. 72337-5-I |
| Appellant, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| WASHINGTON STATE ASSOCIATION | ) | PUBLISHED OPINION |
| OF DISTRICT AND MUNICIPAL | ) | |
| COURT JUDGES, a state agency, | ) | FILED: November 2, 2015 |
| and the STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondents. | ) | |

BECKER, J. — This case involves a request for certain records maintained by the Washington State District and Municipal Court Judges' Association. While providing information in response to the request, the Association asserted that as part of the judiciary it was not subject to the Public Records Act, chapter 42.56 RCW. The requester challenged that assertion by filing a complaint alleging a violation of the act and seeking penalties against the Association. The trial court correctly dismissed the complaint. The Association is a judicial branch agency. It is well established that the Public Records Act does not apply to the judiciary.

Originally known as the "Magistrate's Association," the Washington State District and Municipal Court Judges' Association (DMCJA) was incorporated in October 1953. In 1961, the legislature formally established it as a statutory agency. The statute was entitled "An Act relating to the judiciary; and to justices

of the peace and other inferior courts." LAWS OF 1961, ch. 299, § 123, codified in chapter 3.70 RCW. Under the statute, the Association is comprised of "all duly elected or appointed and qualified judges of courts of limited jurisdiction, including but not limited to district judges and municipal court judges." RCW 3.70.010. Among other activities, the Association reports to the legislature concerning the activities of courts of limited jurisdiction. The Association has also retained a registered lobbyist to track legislation of interest to the Association.

Appellant Arthur West made a Public Records Act request to the Association in March 2013 for information relating to the Association's finances and lobbying activities:

1. All records of income to and expenditures by the Association, 2011 to present.

2. Any records related to any audit or review of Association finances or practices 2011 to present.

3. All records of lobbying by the Association, January of 2012 to present.

4. All communications to and records of DMCJA lobbyist Sam Meyer, January of 2012 to present.

5. All lobbying related expenditures January of 2012 to present.

6. Any refunds to Thurston County for Pro tem commissioners employed to allow Meyer to Lobby for the Association.

7. Any records related to PRA [Public Records Act] compliance by the Association, to include policies for responding to requests.

Spokane District Court Judge Sara Derr, the president of the Association at the time, replied to West that the Public Records Act does not apply to the judicial branch of government. Her letter stated: "The DMCJA is part of the

2

judicial branch of government in Washington State. Thus, the Public Records Act does not apply to the DMCJA. For that reason, we do not have any formal process for dealing with requests for information." The letter did answer several of West's inquiries:[1]

> Nonetheless, we thank you for your interest in our association and would like to provide answers to the questions which seem to have spurred your interest. Judge Samuel Meyer is not a lobbyist; rather he chairs the Legislative Committee of the DMCJA. Melanie Stewart is a registered lobbyist for the DMCJA and has been paid $35,000.00 this fiscal year (July 2012 to date). We have also reimbursed Ms. Stewart in the amount of $626.01 for lobbying expenses during the same period. Pro tem reimbursements have been made for pro tem time for Judge Michelle Gehlsen, in the amount of $227.50 (March 25, 2013); Judge Brett Buckley in the amounts of $217.55 (August 2, 2012), $135.96, $54.38 and $135.90 (March 25, 2013); and Judge Samuel Meyer in the amounts of $136.00 (August 2, 2012), $108.77, $135.96 and $108.77 (March 25, 2013).

West then initiated this litigation by filing a complaint for a declaratory judgment that the Association violated the Public Records Act as well as statutory restrictions on lobbying by public agencies found in the Fair Campaign Practices Act, chapter 42.17A RCW. The Association moved for summary judgment. The trial court granted the motion and denied West's motion for reconsideration.[2] This appeal followed.

---

[1] The statute authorizes government jurisdictions to pay judges' per diem and transportation expenses for up to five days per year for attending meetings of the Association. RCW 3.70.030. According to a declaration submitted in this litigation, the Association has a policy to reimburse jurisdictions for the expense of obtaining a substitute when a judge is attending to Association duties, including when they testify before or report to the legislature.

[2] With his motion for reconsideration, West included reports filed by the Association with the Public Disclosure Commission for the years 2010-2012 showing annual compensation paid to the Association's registered lobbyist.

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We review the trial court's decision de novo. Telford v. Thurston County Bd. of Comm'rs, 95 Wn. App. 149, 157, 974 P.2d 886, review denied, 138 Wn.2d 1015 (1999).

## PUBLIC RECORDS ACT

Under Washington's Public Records Act, an "agency" shall, upon request for identifiable public records, "make them promptly available to any person." RCW 42.56.080. The act applies only to the records of an "agency" as defined by the act. Yakima v. Yakima Herald-Republic, 170 Wn.2d 775, 792, 246 P.3d 768 (2011). West argues that the Association is within the act's broad definition of "agency."

> "Agency" includes all state agencies and all local agencies. "State agency" includes every state office, department, division, bureau, board, commission, or other state agency. "Local agency" includes every county, city, town, municipal corporation, quasi-municipal corporation, or special purpose district, or any office, department, division, bureau, board, commission, or agency thereof, or other local public agency.

RCW 42.56.010(1).

Even an entity that has some private attributes will come within this definition when it is "the functional equivalent of a public agency for a given purpose." Telford, 95 Wn. App. at 161. In Telford, the issue was the status of the Washington State Association of Counties (WSAC) and the Washington Association of County Officials (WACO). These two entities had historically used their funds and facilities to support and oppose ballot measures and had donated

4

to legislative caucuses. Such uses of public funds by public agencies are prohibited. Telford, 95 Wn. App. at 152 n.2. Using a four-factor test, the court held in Telford that these two entities are public agencies that may not use public funds in political campaigns. "Although WSAC and WACO retain some characteristics of private entities, their essential functions and attributes are those of a public agency. They serve a public purpose, are publicly funded, are run by government officials, and were created by government officials." Telford, 95 Wn. App. at 165.

The Association is similar in some ways to the two entities considered in Telford. For example, like WSAC and WACO, the Association is incorporated, it has a governing statute, it has administrative functions, and it is controlled by elected or appointed public officials. See generally Telford, 95 Wn. App. 149. Given these similarities, West contends the Association is a public agency and must comply with the Public Records Act.

The Association is indeed a public agency, but West's argument fails because the Public Records Act definition of "agency" does not include the judiciary. Nast v. Michels, 107 Wn.2d 300, 307, 730 P.2d 54 (1986).

The issue in Nast arose when King County, to meet a budget cut, began charging higher rates for inspecting and copying superior court case files. A suit was brought to determine whether members of the public could avoid the rate increase by obtaining access to the files through a public records request. Our Supreme Court, considering the above definition of "agency," concluded the answer is no. The court ruled favorably for the appellant that requesters had to

be given access to the files for inspection and copying at a reasonable fee and within a reasonable time. But this was because of the common law right of access to court files, not because of the Public Records Act. Nast, 107 Wn.2d at 308. Consequently, the appellant was not entitled to penalties and attorney fees under the Public Records Act. Nast, 107 Wn.2d at 309.[3] The "judiciary and its case files" are not "under the realm" of the Public Records Act. Nast, 107 Wn.2d at 306.

Nast "necessarily held" that the judiciary is not a state or local agency for purposes of the Public Records Act. City of Federal Way v. Koenig, 167 Wn.2d 341, 346, 217 P.3d 1172 (2009). The appellant in Koenig asked for records pertaining to a controversy involving Federal Way Municipal Court. The city responded in part, but did not produce correspondence to and from the presiding judge and other documents that it had classified as court records. A suit was brought claiming that the withholding of those documents was a violation of the Public Records Act. The trial court, citing Nast, ruled that the municipal court was not subject to the Public Records Act. The Supreme Court affirmed and reiterated Nast's holding that the Public Records Act does not apply to the judiciary. Koenig, 167 Wn.2d at 346.

---

[3] Nast cited the public disclosure act, which is how Initiative 276 (enacted in 1972) was originally known. Former chapter 42.17 RCW; see Nast, 107 Wn.2d at 304. In a statute that became effective July 1, 2006, the legislature recodified the sections of the law pertaining to public records as chapter 42.56 RCW, now known and cited as the Public Records Act. LAWS OF 2005, ch. 274, § 102; RCW 42.56.020.

Under <u>Nast</u> and <u>Koenig</u>, the issue in this case is whether the Association is part of the judiciary—not whether it is an agency.

The act must be liberally construed to ensure that the public's interest is protected. RCW 42.56.030; <u>Koenig</u>, 167 Wn.2d at 344. West asserts that in keeping with that principle, <u>Nast</u> and <u>Koenig</u> must be narrowly confined to exclude only courts and court files from the reach of the act. He contends that the Association cannot be part of the judicial branch because it is not a court and is not mentioned in the judicial article of the State constitution.

In <u>Nast</u>, the agency in question was the King County Department of Judicial Administration. Though the Department had certain hallmarks of an executive branch agency, it was charged with maintaining the superior court files. It was this function that placed the Department "within the judicial realm" for purposes of the Public Records Act even though the Department was not vested with judicial power. <u>Nast</u>, 107 Wn.2d at 305.

The Association is not a court, and it does not maintain court files. But its membership and functions bring it within the judicial branch for purposes of the Public Records Act. The Association is composed entirely of judges who automatically become members by virtue of holding judicial office. Among its statutory duties are studying the operation of these courts; promulgating suggested rules for their operation; and reporting to the Supreme Court, the governor, and the legislature:

> The Washington state district and municipal court judges' association shall:
> (1) Continuously survey and study the operation of the courts served by its membership, the volume and condition of

7

business of such courts, the methods of procedure therein, the work accomplished, and the character of the results;

(2) Promulgate suggested rules for the administration of the courts of limited jurisdiction not inconsistent with the law or rules of the supreme court relating to such courts;

(3) Report annually to the supreme court as well as the governor and the legislature on the condition of business in the courts of limited jurisdiction, including the association's recommendations as to needed changes in the organization, operation, judicial procedure, and laws or statutes implemented or enforced in these courts.

RCW 3.70.040. These functions are all part and parcel of the type of administrative work that judges do and always have done, whether or not they do it under the auspices of a formal organization. Unlike in Telford, there is no allegation here that the Association uses its funds or facilities to support political campaigns. By speaking to the legislature through the Association, the judges of courts of limited jurisdiction are simply using an established channel of communication about matters affecting their courts. The Association does not need to be a court or be mentioned in the constitution to be included in the judicial branch.

A new court rule, General Rule 31.1, shows that our Supreme Court regards the Association as part of the judiciary. Adopted by the court in October 2013 and scheduled to be effective in January 2016, GR 31.1 will govern access to the administrative records of the judiciary. The purpose of the rule is to facilitate access to administrative records consistent with the principles of open administration of justice as provided in article I, section 10 of the Washington State Constitution. GR 31.1(a). The rule applies to the Supreme Court, the Court of Appeals, the district and municipal courts, and certain "judicial

8

agencies." Expressly included as a judicial agency is the District and Municipal Court Judges' Association. GR 31.1(k)(1)(ii).

West asserts that GR 31.1 impermissibly amends the right of access to public records granted by the Public Records Act. "A substantive right of a litigant existing under the law cannot be abrogated by courts under the guise of rules of court." State v. Pavelich, 153 Wash. 379, 382, 279 P. 1102 (1929). But if the Association is not an "agency" for purposes of the Public Records Act, there is no substantive right of public access to its records under the act.

We conclude the Association is part of the judiciary and is therefore not within the Public Records Act's definition of "agency." The trial court correctly concluded the Public Records Act does not apply to the Association.

## FAIR CAMPAIGN PRACTICES ACT

West's complaint also asked the court to declare that the Association was in violation of the Fair Campaign Practices Act.[4] The act provides that an "agency" may expend public funds for lobbying, but it sets forth certain limitations and reporting requirements. RCW 42.17A.635(3), (5). The term "agency" has the same definition as in the Public Records Act. RCW 42.17A.005(2).

Authority to determine whether an actual violation of the act has occurred and to enforce an appropriate order, lies primarily with the Public Disclosure Commission. RCW 42.17A.755. The statute also authorizes the attorney general and county prosecutors to bring civil actions in the name of the state for

---

[4] Although West refers to the relevant provisions as part of the "Public Disclosure Act," they are now part of what is known as the "Fair Campaign Practices Act." RCW 42.17A.909.

any appropriate civil remedy. RCW 42.17A.765(1). A citizen action to address violations of chapter 42.17A RCW in the name of the state is permitted only if the attorney general and the local prosecutor fail to bring an enforcement action after being given written notice of the alleged violations. RCW 42.17A.765(4)(a); Utter v. Bldg. Indus. Ass'n of Wash., 182 Wn.2d 398, 407, 341 P.3d 953 (2015), petition for cert. filed 83 U.S.L.W. 3893 (U.S. May 29, 2015) (No. 14-1397).

West did not timely give the prerequisite notices before commencing this action. He cannot avoid the obligation of giving the required notices by styling his action as one for declaratory judgment rather than as a citizen action under RCW 42.17A.765(4). In Telford the citizen plaintiff limited his declaratory judgment action to the question whether the two entities were public agencies. Telford, 95 Wn. App. at 152. West has not so limited his action; he expressly asked the court to find a violation. Under the act's comprehensive enforcement scheme, the attorney general and local prosecutor must be given the opportunity to commence an action before a court will entertain a citizen's request to declare an entity in violation of the act. Because West failed to comply with the statutory procedures, he lacked authority to sue for a judgment that the Association's activities violate the restrictions on agency lobbying.

In view of this conclusion, we need not address the Association's argument that it is not an "agency" for purposes of the lobbying restrictions.

REQUEST FOR RECUSAL

The Association's motion for summary judgment was heard by King County Superior Court Judge Jean Rietschel, formerly a municipal court judge.

When she was a member of the Association, Judge Rietschel served on several of its committees, including the Legislative Committee.

Before the scheduled hearing, West did not deliver working papers to the hearing judge as required by a local rule of court. Consequently, Judge Rietschel had not seen West's brief when the hearing began. West moved for a continuance so that the judge would have the opportunity to review his materials before ruling. The judge granted the continuance and imposed terms of $625 to compensate for defense counsel's unnecessary trip to court. A few days later, West moved to have Judge Rietschel recuse herself based on her past membership in the Association. The judge denied the motion. West challenges this decision.

We review a trial court's decision whether to recuse for abuse of discretion. West v. Wash. Ass'n of County Officials, 162 Wn. App. 120, 252 P.3d 406 (2011). In determining whether recusal is warranted, actual prejudice need not be proved; a mere suspicion of partiality may be enough. Sherman v. State, 128 Wn.2d 164, 205, 905 P.2d 355 (1995). The test for determining whether a judge's impartiality might reasonably be questioned is an objective test that assumes that a reasonable person knows and understands all the relevant facts. Sherman v. State, 128 Wn.2d 164, 506, 905 P.2d 355 (1995).

To show that Judge Rietschel had a potential for bias, West relies on the Code of Judicial Conduct. The code provides that a judge must disqualify herself in any proceeding in which the judge's impartiality might reasonably be questioned. CJC 2.11(A). This includes instances in which the judge has a

11

personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute concerning the proceeding. CJC 2.11(A)(1). It also includes instances in which the judge "served in government employment, and in such capacity participated personally and substantially as a public official concerning the proceeding, or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy." CJC 2.11(A)(6)(b).

A reasonable person would not conclude that Judge Rietschel had a bias that would prevent her from impartially determining whether the Association is part of the judiciary for purposes of the Public Records Act or whether it engages in illegal lobbying activities. The record does not show that Judge Rietschel ever participated in a proceeding where those issues were raised or that she publicly expressed an opinion about them. That she once served on the Association's Legislative Committee does not, by itself, establish a reasonable potential for bias in favor of the Association.

West argues that Judge Rietschel demonstrated "extreme bias and prejudice" against him when she imposed terms against him. Judicial rulings alone "almost never constitute a valid showing of bias." In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). West made a similar claim in West, 162 Wn. App. 120, where he argued that the imposition of CR 11 sanctions against him demonstrated the judge's bias. Like in West, the trial court's imposition of terms against West evidences only his failure to comply with court

rules. Judge Rietschel did not abuse her discretion when she declined to recuse herself.

## ORDER OF TERMS

West's final challenge on appeal concerns the court's decision to impose terms as a condition for granting his motion for a continuance. We will overturn the court's decision only if there exists a manifest abuse of discretion. State v. Ralph Williams' Nw. Chrysler Plymouth, Inc., 87 Wn.2d 298, 553 P.2d 423 (1976), appeal dismissed, 430 U.S. 952, 97 S. Ct. 1594, 51 L. Ed. 2d 801 (1977).

The local rule states, "Any material offered at a time later than required by this rule . . . will not be considered by the court over objection of counsel *except upon the imposition of appropriate terms*, unless the court orders otherwise." King County Local Court Rule 7(b)(4)(G) (emphasis added). Contrary to West's assertion, the rule does not require an objection from the opposing party as a prerequisite for the imposition of terms. West does not dispute that he failed to timely submit bench copies in the manner required by rule, nor does he dispute that he asked for a continuance due to this failure. West's conduct directly resulted in a delay of the proceedings and expenses to the Association. The imposition of terms was not an abuse of discretion.

Affirmed.

WE CONCUR:

Becker, J.

Trickey

Appelwick, J